IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| PROGRESSIVE TECHNOLOGIES, INC. )<br>    Plaintiff, )<br>)<br>)<br>v. )<br>)<br>ADEPT PATRIOT SERVICES, LLC, )<br>    Defendant. )<br>) | No. 5:24-cv-05101-TLB |

**COMPLAINT FOR BREACH OF CONTRACT AND OTHER RELIEF**

COMES NOW Progressive Technologies, Inc. ("Progressive"), by and through counsel, and submits its Complaint for Breach of Contract and Other Relief as follows:

**PARTIES**

1. Plaintiff Progressive is a Tennessee corporation licensed to do business in the State of Arkansas. Progressive has its principal place of business at 3750 Old Getwell Road, Memphis, TN 38118. Progressive engages in low voltage, security, and technology solutions sales and installation.

2. Upon information and belief, Defendant Adept Patriot Services, LLC ("Adept") is a limited liability company organized under the laws of Virginia. Upon information and belief, no members of Adept are citizens of Tennessee. Adept may be served with process through its registered agent, Virginia Registered Agent Services, LLC 4445 Corporation Lane, Suite 264, Virginia Beach, VA 23462

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over Adept as this cause of action arises out of Adept's contacts with the State of Arkansas.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

**A. Progressive's Contract with Adept**

6. Adept was the general contractor for the expansion and alteration of the fire alarm system at the Veterans' Affairs Health Care System Campus located in Fayetteville, Arkansas (the "Project").

7. The Project was to be performed on a public building owned by the United States of America, Department of Veteran Affairs (the "VA").

8. The Project initially consisted of the installation of conduit and power, followed by the installation and testing of a fire alarm system, for twenty-one buildings, among other things.

9. On or about April 1, 2021, Adept and Progressive entered into a contract for Progressive to perform the fire alarm portion of the Project, among other things (the "Subcontract"). A copy of the Subcontract is attached as **Exhibit A** and incorporated herein by reference.

10. As provided in the Subcontract, Progressive was to perform, among other things, "[d]emolition, installation, testing, [and] commissioning of the Fire Alarm System per the project documents." Ex. A at 1. Conduit and power were to be provided by others, and Adept was to provide and install fiber optic cabling. *Id.*

11. The Subcontract provided that Adept "shall pay Subcontractor the sum of $171,555.00 for the performance of the scope of work as stated above." Ex. A at 1. The Subcontract further provided that any retention held by Adept "shall be paid upon completion and acceptance by the Owner." *Id.*

12. Progressive performed work on the Project for which it has not been paid.

13. The Project was plagued by disruptions in work, inefficiencies which caused work to have to be performed out of sequence, inaccessible work areas, issues with work performed by other subcontractors and/or Adept that affected the critical path, supply chain issues, and other delays and problems, none of which were caused by Progressive, but which resulted in damages to Progressive, the exact amount of which will be proven at trial.

14. Axis Electric ("Axis"), the subcontractor responsible for installing conduit and power to each of the buildings, began its portion of the work on or about June 15, 2021.

15. The critical path of the project required that Axis and/or Adept complete their work prior to Progressive's work commencing.

16. During the course of Progressive's work, Progressive discovered issues with work performed by Axis and/or Adept and informed Adept of those issues.

17. The issues with Axis's and/or Adept's work included, but are not limited to, failure to place conduit as required by the plans, installation of the incorrect type of electrical

3

box as needed for the fire alarm system, failure to install the correct pathways, and failure to correctly install fiber optic cabling.

18. Due to the actions and omissions of Axis and/or Adept that were outside the control of Progressive, Progressive was not able to complete its work by the deadline, December 17, 2021.

19. On or about January 14, 2022, the VA accepted the Project, except for two work stations that had not been installed due to shipping delays by the fire alarm manufacturer, Notifier, a company affiliated with Honeywell International ("Notifier").

20. On or about February 10, 2022, one of the monitors for a work station arrived. Adept instructed Progressive to hold the monitor and delay installation of the two work stations until the second monitor arrived.

21. On or about February 21, 2022, Progressive informed Adept that Notifier had delayed the shipping date for the second monitor.

22. On or about February 22, 2022, Adept sent a punch list of outstanding items on the Project. Only one item on the punch list was Progressive's responsibility, and Progressive remedied that item the same day.

23. On or about Wednesday, April 6, 2022, Adept changed course and asked Progressive whether it could install the two workstations that week.

24. This was the first notice Progressive received that Adept wanted Progressive to proceed with the installation of the two workstations without the second monitor.

25. Adept's request did not provide Progressive with sufficient time to permit Progressive to mobilize its teams who were schedule to work on other jobs.

26. Progressive began work to install the two work stations on or about April 21, 2022.

27. Progressive's work installing the two work stations was again delayed by issues outside of its control, including, but not limited to, additional issues with the fiber optic cabling installed by Adept, availability of the VA's representative, and requests by the VA outside the scope of Progressive's work for Progressive to develop workarounds to make the VA's existing outdated software work with the new system without purchasing new licenses for the entire campus.

28. On or about April 29, 2022, Progressive completed the installation of the two work stations, except for the second monitor.

29. Adept then removed the installation of the second monitor from Progressive's scope of work.

30. Thereafter, Progressive was on site intermittently to troubleshoot some issues, which were resolved. During this period, Progressive troubleshooted issues that were outside of its scope of work as a courtesy and without charge to the VA and Adept.

31. On or about May 23, 2022, the two work stations were programmed and fully operational.

**B.    Adept Breaches the Subcontract by Failing to Pay Progressive.**

32. On or about September 17, 2021, Progressive submitted its Pay Application No. 1 for $54,576.73, with the payment due (net of retainage) of $49,113.05.

33. On or about November 9, 2021, Progressive submitted Pay Application No. 2 for $26,586.71, with the payment due (net of retainage) of $23,928.06.

34. On or about December 30, 2021, Adept approved payment of $22,420.83 for Pay Application No. 1 and $22,993.78 for Pay Application No. 2

35. On or about February 10, 2022, Progressive received an email stating that Adept had approved $22,420.83 for Pay Application No. 1 and $22,993.78 for Pay Application No. 2.

36. On or about February 11, 2022 and February 12, 2022, Progressive requested that Adept provide an explanation for the discrepancy in the approved payments versus the amounts requested in Pay Applications Nos. 1 and 2.

37. On February 11, 2022, Adept emailed Pay Applications Nos. 1 and 2 with the notes and adjustments made.

38. On February 12, 2022, Progressive followed up with an email inquiring about the reason for the unsubstantiated reductions.

39. On or about February 14, 2022, Adept stated in an email to Progressive that the "short pay was based on the project status at the time" but "[m]ost of the equipment is installed now" so Adept would "update the payment amount to match the work completion."

40. In reliance upon Adept's representation that additional payment would be forthcoming and that it would be "easier" and "cleaner" if Progressive adjusted the amount it billed in Pay Applications Nos. 1 and 2 to match the amount that Adept had approved, Progressive adjusted Pay Applications Nos. 1 and 2 to match the payments that were then in progress, and prepared Pay Application No. 3 to reflect the project as complete with the final balance due.

41. On February 15, 2022, Progressive submitted the adjusted Pay Applications Nos. 1 and 2, and the final Pay Application No. 3 for $121,094.31, with the payment due (net of retainage) of $108,984.88.

42. On February 17, 2022, Progressive received the payments for the adjusted Pay Application Nos. 1 and 2, in the amount of $22,420.83 and $22,993.78, respectively. Adept withheld $5,046.07 as retainage for Pay Applications Nos. 1 and 2.

43. After multiple follow up emails regarding payment, on or about June 22, 2022, Adept claimed that it incurred $53,084.18 in costs due to delay, most of which consisted of multiple Adept personnel attending weekly meeting with the VA regarding the Project's status. Adept indicated that it would approve $67,951.41 of the total outstanding balance of $126,140.38, including the previously withheld retainage.

44. On May 8, 2023, Progressive disputed Adept's claims that it incurred costs due to Progressive's delay and requested full payment of the outstanding balance of $126,140.38.

45. On May 9, 2023, Adept then changed its previous position and informed Progressive that it would not be paying any of the $126,140.38 balance owed on the Project.

46. Progressive is owed $126,140.38 under the Subcontract

## COUNT ONE: BREACH OF CONTRACT

47. Plaintiff hereby incorporates Paragraphs 1 through 46.

48. As the general contractor for the Project, Adept contracted with Progressive to supply labor and materials for work described in the Subcontract.

49. Adept has refused to pay amounts due to Progressive in breach of the Subcontract

50. As a result, Progressive has been damaged in an amount exceeding $126,140.38.

## COUNT TWO: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

51. Plaintiff hereby incorporates Paragraphs 1 through 50.

52. The Subcontract included implied covenants of good faith and fair dealing which inured to the benefit of Progressive.

53. Adept's conduct violates standards of decency, fairness, and reasonableness.

54. Adept breached its obligation of good faith and fair dealing toward Progressive, resulting in damages to Progressive in an amount to be proved at trial.

### COUNT THREE: UNJUST ENRICHMENT

55. Plaintiff hereby incorporates Paragraphs 1 through 54.

56. Pleading in the alternative, as prime contractor for the Project, Adept has been paid for the work performed and materials supplied by Progressive and received the benefit of Progressive's work.

57. If Adept were permitted to retain payments made to it under the contract for the Project without, in turn, compensating Plaintiff for the work and materials it supplied, Adept would be unjustly enriched.

58. Therefore, Progressive is entitled to damages from Adept in an amount exceeding $126,140.38.

### COUNT FOUR: STATUTORY ATTORNEYS' FEES

59. Plaintiff hereby incorporates Paragraphs 1 through 58.

60. Arkansas Code Annotated § 16-22-308 provides that in a civil action to recover on a contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services or breach of contract, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the Court and collected as costs.

61. Progressive respectfully requests that the Court award it its reasonable attorneys' fees against Adept pursuant to Arkansas Code Annotated § 16-22-308.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays as follows:

1. That proper process issue and be served upon the Adept requiring it to answer or otherwise respond;

2. That Plaintiff be awarded compensatory damages in the amount of $126,140.38 plus consequential damages;

3. That a judgment be entered against Adept for pre-and post-judgment interest;

4. That all court costs be adjudged against the Adept;

5. That Adept pay all of Plaintiff's attorneys' fees and costs as required under Arkansas Code Annotated § 16-22-308; and

6. That this Court grant any and all other relief, specific or general, to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ Shea Sisk Wellford*
Shea Sisk Wellford (Ark Bar No. 95231)
Martin, Tate, Morrow & Marston, P.C.
6410 Poplar Avenue, Suite 1000
Memphis, TN  38119-4839
Telephone:  (901) 522-9000
Facsimile:  (901) 527-3746
sheawellford@martintate.com

*Attorneys for Progressive Technologies, Inc.*