IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**PROGRESSIVE TECHNOLOGIES, INC.**            **PLAINTIFF**

V.            **CASE NO. 5:24-CV-5101**

**ADEPT PATRIOT SERVICES, LLC**            **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Progressive Technologies, Inc.'s ("Progressive") Motion for Summary Judgment (Doc. 48), which Defendant Adept Patriot Services, LLC ("Adept") opposes.[1] For the reasons stated below, the Motion is **DENIED**.

### I. BACKGROUND

This case arises out of a construction dispute between Progressive, a subcontractor, and Adept, a general contractor. Adept was hired to install a fire alarm system ("the Project") in eighteen buildings of the Veterans' Affairs ("VA") Health Care System Campus located in Fayetteville, Arkansas. Adept then subcontracted certain jobs to Progressive, including demolition work on the existing fire alarm system and installation, testing, and commissioning the upgraded system. The total amount Adept agreed to pay Progressive under the subcontract was $171,555.00. Adept subcontracted other jobs to nonparty Axis Electric, which was tasked with placing conduits for cable and

---

[1] In addition to the Motion, the Court considered Progressive's Brief in Support of Summary Judgment (Doc. 48) and Statement of Facts (Doc. 50); Adept's Brief in Opposition to Summary Judgment (Doc. 58), Response to Progressive's Statement of Facts (Doc. 56), and separate Statement of Facts (Doc. 57); and Progressive's Reply in Support of Summary Judgment (Doc. 65) and Response to Adept's Statement of Facts (Doc. 66).

1

supplying power to the Project. Adept's role was to oversee all subcontractor work and install fiber optic cable for the new fire alarm system.

At some point, VA eliminated a few of the buildings from the scope of work, and Adept presented VA with a proposal to reduce the prime contract amount to account for the reduced scope. Progressive proposed that its payment under the subcontract be reduced by $1,415.00 to account for the elimination of the three buildings, but Adept never agreed to Progressive's proposal, and the parties still disagree about the value of the reduced scope of work.

The entire Project was supposed to have been completed by December 17, 2021; however, some tasks ran behind schedule. According to Progressive, both Axis Electric and Adept improperly installed a number of items or delayed installation, which caused Progressive to fall behind on its own installation deadlines. Adept counters that Progressive's delays were its own fault, as Progressive procrastinated its jobs and failed to send enough personnel to the worksite.

Progressive maintains that by January 2022, VA had approved all work on the Project. The only remaining task was the installation of two workstations in Building 1. After the parts for these two units arrived, Progressive attempted to complete the job but contends it was once again delayed—this time by both Adept and VA. Progressive claims it finally finished its work under the subcontract in May 2022.

Adept tells a different story. Its position is that Progressive still had more work to do as of June 2022 but refused to complete it. As a result, Adept was forced to take over the Project and complete Progressive's work at Adept's expense. Progressive denies all

2

this and insists that the tasks Adept asked it to perform in June were outside the agreed scope of work. For example, Adept supposedly requested that Progressive reprogram a new fire alarm control panel to be compatible with outdated software—as a cost-saving measure. Progressive refused because it believed reprogramming the panel this way would have voided the manufacturer's warranty on the new panel.

In the end, Adept passed all of Progressive's bills on to VA for payment, and VA paid every bill in full. However, Adept refused to tender all payments to Progressive because it believed Progressive breached the subcontract. Of the $171,555.00 that Progressive billed to the Project, Adept paid Progressive only $45,414.62 and kept the rest. Sometime in June 2022, Adept presented Progressive with a damages estimate of $53,084.18 but allegedly failed to explain why it was retaining the remaining balance—over $73,000.00. It was only after Progressive filed suit that Adept created a new damages estimate of $137,647.97—well in excess of the amount Adept retained from VA's payments. Progressive asserts that Adept's new damages estimate bears no relationship to actual costs Adept expended on the Project and is not substantiated by receipts, invoices, or employee time sheets.

In addition to moving for summary judgment on its own breach of contract claim, Progressive argues that Adept's counterclaim for breach of contract should be dismissed as a matter of law. Progressive asserts two affirmative defenses to breach: unclean hands and estoppel. Both defenses rest on the theory that Adept should be equitably barred from retaining Progressive's money because Adept certified to VA in writing—using Federal Acquisition Regulation Form 52.232-5(c)(3) ("FAR Form")—that the bills did "not

3

include any amounts which [Adept] intend[ed] to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract."[2] Progressive points out that Adept *did* withhold some payments from Progressive, which means Adept violated the certifications and has unclean hands or should otherwise be estopped from retaining the funds. Adept responds that these affirmative defenses are meritless. In Adept's view, each time it submitted a FAR Form and invoice, Adept fully intended to pay Progressive; but as the Project came to an end and it became clear that Progressive would not complete the work on time, Adept enforced its contractual right to retain certain payments. Section 1.2 of the subcontract states:

> In the event of any breach by the Subcontractor of any provision or obligation of this Subcontract, . . . the Contractor shall have the right to retain out of any payments due or to become due to the Subcontractor an amount sufficient to completely protect the Contractor from any and all loss, damage or expense there from, until the situation has been satisfactorily remedied or adjusted by the Subcontractor.

(Doc. 50-6).

## II. LEGAL STANDARD

A party moving for summary judgment must establish the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. When there exists no genuine issue as to any material fact,

---

[2] It is undisputed that Adept submitted multiple FAR Forms to VA for Progressive's bills over the course of months. *See* Doc. 49, pp. 14–15.

4

"summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

Progressive's request for summary judgment on its claim for breach of contract is easily denied. As the above factual recitation shows, there remain genuine, material disputes of fact that preclude summary judgment. In particular, the parties disagree about whether Project delays occurred, and if so, who was to blame. They further disagree about whether Adept completed any of Progressive's work and whether Adept is entitled to retain any of Progressive's fees in payment for that work. At trial, the parties will present their dueling theories and demands for damages.

As for Progressive's request for judgment on Adept's counterclaim for breach of contract, the Court finds that Progressive's affirmative defenses of unclean hands and estoppel are no bar to Adept's claim. The "clean hands maxim" stands for the proposition that "[one] who comes into equity must come with clean hands" and, thus, "bars relief to those guilty of improper conduct in the matter as to which they seek relief." *Marshall v. Marshall*, 227 Ark. 582, 586 (1957) (citation omitted). Adept appears to acknowledge that equitable defenses generally cannot bar legal claims—like breach of contract. *Cf. Poff v.*

5

*Brown*, 374 Ark. 453, 456–57 (2008) (affirming the application of the clean hands doctrine where the plaintiff "chose to proceed in equity rather than seek damages in an action at law"). But even if the unclean hands defense were somehow applicable here, Progressive fails to cite any law to suggest a prime contractor's signature on a FAR Form would trump its right under the subcontract to retain and recoup any fees, costs, and expenses for nonperformance. Furthermore, even if a so-called false certification on a FAR Form could support an argument for unclean hands, there is at least a genuine, material dispute of fact about whether Adept's certifications were, indeed, false. Adept insists that at the time it submitted each FAR Form, it intended to pay Progressive in full. It was only later, once the Project was done, that Adept decided it must retain some of the funds due to nonperformance. Relatedly, Adept is not equitably estopped from attempting to enforce Section 1.2 of the subcontract, which, by its plain language, permits Adept to "retain out of any payments due or to become due to the Subcontractor an amount sufficient to completely protect the Contractor from any and all loss." (Doc. 50-6).

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Progressive's Motion for Summary Judgment (Doc. 48) is **DENIED**.

**IT IS SO ORDERED** on this 20th day of October, 2025.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE